# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Legal Technology Group, Inc.**<br>**d/b/a eSentio Technologies,**<br>700 12th Street, N.W.<br>Suite 700<br>Washington, D.C. 20005,<br><br>      Plaintiff,<br><br>      v.<br><br>**Rajiv Mukerji**<br>334 Kimberly Road<br>Akron, OH  44313<br><br>      And<br><br>**HBR Consulting LLC**<br>440 South LaSalle Street<br>Suite 2250<br>Chicago, IL  60605<br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case Number:  1:17-CV-631 |

## COMPLAINT

Plaintiff Legal Technology Group, Inc. d/b/a eSentio Technologies ("eSentio" or "the Company"), brings this Complaint against Defendants Rajiv Mukerji and his employer, HBR Consulting LLC ("HBR").

## Nature of the Action

1. In this action, eSentio seeks preliminary and permanent injunctive relief, as well as money damages, against its former employee, Mukerji, and his new employer, HBR. As set forth herein, Mukerji is contractually bound to adhere to specific post-employment restrictive

covenants. In the course of his employment with HBR, an eSentio competitor, Mukerji has breached those covenants, resulting in damage to eSentio.

## The Parties

2. eSentio is a Delaware corporation that maintains its principal place of business in Washington, D.C.

3. HBR is a limited liability company that maintains its principal place of business in the State of Illinois.

4. Mukerji is an individual who is domiciled in, and is a citizen of, the State of Ohio.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. § 1332 (Diversity). The amount in controversy exceeds $75,000, exclusive of interests and costs. The parties are citizens of different states and thus satisfy the requirement of complete diversity. eSentio is a corporate entity and thus is a citizen of the state in which it is incorporated (Delaware) and the jurisdiction of its principal place of business (the District of Columbia). Mukerji is an individual and thus is a citizen of the state in which he is domiciled (Ohio). As a limited liability company, HBR carries the citizenship of each of its members for diversity purposes. According to the Illinois Secretary of State, HBR has two members – Christopher Petrini-Poli and Nicholas Quil. Both of HBR's members are domiciled in and thus citizens of the State of Illinois.

6. This Court may exercise personal jurisdiction over all parties.

7. Mukerji is subject to personal jurisdiction pursuant to D.C. Code §§13-423(a)(1) and (a)(2). The claims asserted against Mukerji arise from Mukerji's employment with eSentio and, specifically, the employment agreement he entered into with eSentio. Accordingly, the

claims arise directly from Mukerji's transaction of business in, and his contracting to supply services in, the District of Columbia.  Mukerji is also subject to personal jurisdiction pursuant to D.C. Code § 13-423(a)(3), inasmuch as this lawsuit arises in part from Mukerji's tortious interference with eSentio's relationship with a Washington, D.C.-based client.

8. HBR is subject to personal jurisdiction pursuant to D.C. Code §§ 13-423(a)(3) and (a)(4).  The claims against HBR arise from HBR's tortious interference with eSentio's relationship with a Washington, D.C.-based client.  Additionally, HBR regularly does or solicits business, engages in a persistent course of conduct, and/or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia, and the claims in this litigation arise, in part, from HBR's causing tortious injury to eSentio in the District.

9. Pursuant to 28 U.S.C. § 1391(b)(3), venue is proper in this Court.

### Relevant Facts

*eSentio's Business*

10. eSentio is a technology consulting and implementation firm that provides business and technology consulting and implementation services to the world's largest law firms and corporate legal departments.  eSentio offers its clients high-value information management solutions, including but not limited to strategic planning, matter centric collaboration, business continuation planning, knowledge management, records management, document management, staff organization and assessment, and systems integration and desktop technology.

11. Although the services it provides are varied, eSentio has developed an expertise in NetDocuments, a cloud-based document and email management platform.  The Company has made substantial investments of time, training and money developing its NetDocuments

expertise to the point that, today, eSentio is recognized as the industry leader in converting law firms to the NetDocuments platform.

12. eSentio delivers these services through a staff of carefully recruited, highly skilled, and meticulously trained business consultants and IT professionals.

13. In addition to specialized training, eSentio provides its employees extensive access to its clients and prospective clients. eSentio employees interact with clients on a regular basis. This extensive contact is essential, as eSentio's consultants are called on to provide technical assistance, business advice and consultation, and ultimately to recommend and implement broad-based strategic technological solutions. eSentio consultants must earn their clients' confidence and trust to carry out their duties effectively. The same is true for prospective clients. Indeed, eSentio's focus on building confidence and trust among its clients starts long before a contract is signed. eSentio consultants work extensively with potential clients, meeting with key personnel, acquiring an understanding of their needs, and learning their limitations.

14. Throughout their employment, eSentio employees are also given access to the Company's competitively sensitive and highly-confidential information. This information includes, but is not limited to: strategic plans for developing and marketing its services to clients; client lists and lists of prospective clients; information related to the identified preferences of its clients and prospective clients; competitively sensitive bidding strategies and pricing information; and technological know-how related to the implementation of the strategic technological solutions eSentio provides to its clients. With regard to NetDocuments specifically, eSentio has invested substantial time, money, and expertise in creating its own

proprietary "design notebook," an invaluable resource that provides eSentio a competitive advantage when competing for NetDocuments conversion projects.

15. eSentio takes reasonable steps to protect the confidentiality of this information. For example, eSentio requires its employees to execute non-disclosure agreements that prohibit the use or disclosure of sensitive and confidential Company information. eSentio has required its clients to execute similar non-disclosure agreements. Additionally, sensitive information housed on eSentio's computer network is restricted, with access being given only to selected managers and others with a specific need to know such information.

16. Because they are provided specialized training, extensive client contact, and access to confidential information and trade secrets, eSentio requires its employees to execute employment agreements that include competitive restrictions that apply both during their employment and for a reasonable post-employment period. Generally speaking, these restrictions prohibit eSentio employees from using or disclosing eSentio's confidential information, from soliciting eSentio's employees and subcontractors, and from working in competition with eSentio to divert business from a defined set of eSentio clients and prospective clients.

### *Mukerji's Employment by eSentio*

17. Mukerji began his employment with eSentio in July of 2011.

18. Mukerji served as the Director of eSentio's Document Management System ("DMS") practice. This was a critical role for the Company. Mukerji recruited and hired key employees, built and managed a team of technical experts and DMS consultants, and directed the work of eSentio's DMS practice. Murkerji also led design meetings, and he was a key participant in development of the Company's business strategy.

19. Additionally, Mukerji actively engaged with eSentio clients and prospective clients. For example, he took the lead role in writing and explaining Project Implementation Plans – effectively the blueprints that laid out the strategies and processes for the Company's work on specific client projects. He also attended sales meetings, participated in conferences and conference calls with clients and prospective clients, and wrote proposals for client work. He was also routinely featured at "CIO Roundtables," regional meetings between Company personnel and law firm and law department CIOs that showcased eSentio's DMS business. Indeed, Mukerji was, effectively, the principal manager of the relationships between the Company and many of its key DMS clients and prospective clients.

20. In carrying out his duties for eSentio, Mukerji was given extensive access to, and required to use, eSentio's confidential information described above.

21. In addition, over the course of his five years with eSentio, at substantial time and expense to the Company, Mukerji was trained and developed into one of the Company's leading NetDocuments consultants.

22. Like other employees, Mukerji was required, as a condition of his employment, to execute eSentio's Employee Agreement on Ideas, Inventions and Confidential Information (the "Agreement"). Mukerji signed this Agreement on July 20, 2011. See Exhibit A.

23. Pursuant to the Agreement, Mukerji is prohibited, for one year after the end of his eSentio employment, from soliciting eSentio's employees and subcontractors and from working in competition with eSentio to divert business from a defined set of eSentio clients and prospective clients.

24. Specifically, Section 3.8(a) of the Agreement provides, in relevant part:

> *I hereby covenant and agree that at no time during my employment with Company and for a period of one year immediately following the*

> *termination of my employment . . . with Company will I act in any way, directly or indirectly, to solicit, divert or take away any client of Company or prospect that I have been involved in pursuing business with during the six months prior to the termination of my employment with the company. I understand that this "non-compete" is intended to include accepting employment with a client of Company for the period and involvement stated above. An eSentio client is defined as a firm that eSentio has sold product or performed services for in the previous two years from the date of termination of employment.*

Agreement §3.8(a).

25. These restrictions are critical to eSentio's protection of its legitimate business interests.

26. As described above, Mukerji was a key employee at eSentio. Even more critical, however, is that Mukerji had become the industry-recognized "face" of eSentio's NetDocuments conversion business.

27. In fact, two of the Company's important strategic clients – the law firms of Akin Gump Strauss Hauer & Feld LLC ("Akin") and King & Spalding – had been specifically assigned to Mukerji. Both Akin and King & Spalding had retained eSentio in the past, and both had positive relationships with eSentio. As a result of their client/vendor relationships, eSentio was aware that both firms were likely to move to a cloud-based document management system in the future.

28. Within the six-month period before his employment ended, Mukerji was engaged in pursuing additional business from both of these firms. In fact, in his business development pipeline reports – which he completed weekly – Mukerji listed both Akin and King & Spalding among the firms he had identified for potential business opportunities and further solicitation. Mukerji listed both firms among his active prospects only one month before his eSentio employment ended.

29.     Unfortunately, before he could capture any business for eSentio, Mukerji voluntarily resigned his employment.

### *Mukerji's Employment by HBR and Violation of his Contractual Duties*

30.     Immediately following his resignation, Mukerji became employed by HBR, a large competitor of eSentio.

31.     Mukerji is employed in HBR's Global Law Firm Advisor Practice, performing essentially the same services and duties he performed for eSentio.  Specifically, Mukerji has been engaged in NetDocuments conversion projects for law firms – precisely the same work he performed for eSentio.

32.     Moreover, Mukerji was instrumental in HBR's recent wins of NetDocuments conversion projects with Akin and King & Spalding.

33.     Both law firms have been seeking advice and implementation support related to their migration to cloud-based document management systems.  Both law firms evaluated competing bids from competing vendors – including HBR and eSentio – to provide them with this advice and implementation support.

34.     On information and belief, in both cases HBR identified Mukerji as one of its key personnel for the project, and Mukerji's anticipated role on the projects was a critical factor in each firm's retention of HBR instead of eSentio.  Indeed, the teams assigned to such conversion projects are typically comprised of only three to five individuals, so Mukerji's role on HBR's proposed team was essential, particularly given his industry-leading reputation developed at eSentio's expense.

35.     At the time of their solicitation of Akin and King & Spalding, Mukerji and HBR had knowledge: (i) that Akin is both a "client" and a "prospect" as defined in Section 3.8(a) of

the Agreement; (ii) that King & Spalding is a "prospect" as defined in Section 3.8(a) of the Agreement; and (iii) that by participating in the bidding process and allowing himself to be pitched by HBR as a key resource and team member, Mukerji acted "to solicit, divert or take away" these opportunities from eSentio.

36. Mukerji's actions with regard to HBR's bids for the NetDocuments conversion projects at Akin and King & Spalding violate Section 3.8(a) of his Agreement.

37. HBR's actions to cause Mukerji to violate his Agreement constitute tortious interference with eSentio's contract rights.

38. Mukerji's and HBR's actions were knowing and willful, and carried via improper means, resulting in their tortious interference with eSentio's prospective contracts and business relationships.

**Count I**
**Breach of Contract**
**(Mukerji)**

39. Plaintiff incorporates by reference, and restates herein, the allegations set forth in Paragraphs 1 through 38, above.

40. Mukerji executed the Agreement on or about July 20, 2011.

41. The Agreement is a valid and enforceable contract between eSentio and Mukerji.

42. eSentio has performed, in all material respects, its obligations under the Agreement.

43. Pursuant to the Agreement, Mukerji owes several post-employment obligations to eSentio.

44. Included among these obligations are restrictions on using or disclosing eSentio's confidential information and trade secrets. Additionally, the Agreement prohibits Mukerji, for

one year after his eSentio employment ended, from soliciting eSentio's employees and subcontractors and from working in competition with eSentio to divert business from a defined set of eSentio clients and prospective clients.

45. Mukerji has breached the Agreement by, among other things, acting to solicit, divert or take away eSentio clients and prospects, as defined in the Agreement, including but not limited to the law firms of Akin and King & Spalding, as set forth herein.

46. Mukerji's breaches of the Agreement have directly and proximately resulted in damage to eSentio.

47. The full amount of this damage is not immediately determinable or calculable, and is likely irreparable.

48. Mukerji's breaches of the Agreement are material and ongoing.

49. Absent preliminary and permanent injunctive relief, eSentio will continue to suffer irreparable harm.

### Count II
### Tortious Interference with Contract
### (HBR)

50. Plaintiff incorporates by reference, and restates herein, the allegations set forth in Paragraphs 1 through 38, above.

51. Mukerji's Agreement is a valid and enforceable contract.

52. Pursuant to the Agreement, Mukerji owes several post-employment obligations to eSentio.

53. Included among these obligations are restrictions on using or disclosing eSentio's confidential information and trade secrets. Additionally, the Agreement prohibits Mukerji, for one year after his eSentio employment ended, from soliciting eSentio's employees and

subcontractors and from working in competition with eSentio to divert business from a defined set of eSentio clients and prospective clients.

54. Mukerji has breached the Agreement by, among other things, acting to solicit, divert or take away eSentio clients and prospects, as defined in the Agreement, including but not limited to the law firms of Akin and King & Spalding, as set forth herein.

55. At all material times, HBR knew of the existence of the Agreement and was aware of Mukerji's post-employment restrictions.

56. Despite this knowledge, HBR intentionally permitted and caused Mukerji to breach his contractual obligations to eSentio.

57. HBR took this action to reap the economic benefits of Mukerji's breaches.

58. HBR was not privileged or justified in taking the action it took to permit and cause Mukerji to breach his contract.

59. By taking this action, HBR tortiously interfered with eSentio's contractual rights set forth in the Agreement.

60. HBR's interference was intentional, wrongful, and accomplished by improper means.

61. HBR's and Mukerji's actions have directly and proximately resulted in damage to eSentio.

62. The full amount of this damage is not immediately determinable or calculable, and is likely irreparable.

63. HBR's interference with Mukerji's contractual obligations, and Mukerji's breaches of the Agreement, and are material and ongoing.

64.     Absent preliminary and permanent injunctive relief, eSentio will continue to suffer irreparable harm.

### Count III
### Tortious Interference with Prospective
### Economic Advantage and/or Prospective Contracts
### (Mukerji and HBR)

65.     Plaintiff incorporates by reference, and restates herein, the allegations set forth in Paragraphs 1 through 38, above.

66.     eSentio has and had valuable business relationships with its clients, including but not limited to Akin and King & Spalding.

67.     eSentio also had valuable contract expectancies in specific prospective contracts for NetDocuments conversion projects with Akin and King & Spalding, as set forth herein.

68.     Mukerji and HBR had knowledge of these business relationships and contract expectancies.

69.     Mukerji interfered in these business relationships and contract expectancies by carrying out duties for HBR, in violation of his contractual obligations to eSentio, to secure these business relationships and contract expectancies for HBR.

70.     Mukerji's interference was intentional, wrongful, and accomplished by improper means.

71.     HBR interfered in these business relationships and contract expectancies by permitting and causing Mukerji to violate his contractual obligations to eSentio to secure these business relationships and contract expectancies for HBR.

72.     HBR's interference was intentional, wrongful, and accomplished by improper means.

73. HBR's and Mukerji's actions have directly and proximately resulted in damage to eSentio.

74. The full amount of this damage is not immediately determinable or calculable, and is likely irreparable.

75. HBR's and Mukerji's interference with eSentio's business relationships and contract expectancies is ongoing.

76. Absent preliminary and permanent injunctive relief, eSentio will continue to suffer irreparable harm.

### **Prayer for Relief**

Wherefore, eSentio asks the Court to enter judgment in its favor on all counts and to:

(a) Preliminarily and permanently enjoin Mukerji from violating the Agreement;

(b) Preliminarily and permanently enjoin Mukerji from providing any services to Akin or King & Spalding related to the NetDocuments conversion projects for which HBR has been retained;

(c) Preliminarily and permanently enjoin HBR from providing any services to Akin or King & Spalding related to the NetDocuments conversion projects for which HBR has been retained;

(d) Extend the Restricted Period in Mukerji's Agreement for a period of time equal to the period of time of his violation of the Agreement and order Mukerji to specifically perform the terms of the Agreement during the extended period;

(e) Order Mukerji to pay eSentio compensatory damages in an amount to be proven at trial, but not less than $2,000,000;

    (f)    Order Mukerji to pay eSentio punitive damages in an amount to be proven at trial, but not less than $3,000,000;

    (g)    Order HBR to pay eSentio compensatory damages in an amount to be proven at trial, but not less than $2,000,000;

    (h)    Order HBR to pay eSentio punitive damages in an amount to be proven at trial, but not less than $3,000,000; and

    (i)    Order such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Michael J. Lorenger
Michael J. Lorenger (DC Bar #45146)
Christine M. Burke (DC Bar #492074)
651 South Washington Street
Alexandria, Virginia 22314
(703) 684-1800 Direct
(703) 684-1805 Fax
mlorenger@lorengercarnell.com
cburke@lorengercarnell.com

Counsel for Plaintiff Legal Technology Group, Inc.

## Jury Demand

eSentio request a trial by jury of all matters herein.

/s/ Michael J. Lorenger
Michael J. Lorenger (DC Bar #45146)
Christine M. Burke (DC Bar 492074)
651 South Washington Street
Alexandria, Virginia 22314
(703) 684-1800 Direct
(703) 684-1805 Fax
mlorenger@lorengercarnell.com
cburke@lorengercarnell.com

Counsel for Plaintiff Legal Technology Group, Inc.